State of Nebraska, appellee, v.
Paul A. Valverde, appellant.

___ N.W.2d ___

Filed July 19, 2013.    No. S-12-444.

1. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

2. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

3. **Motions for Mistrial: Appeal and Error.** The decision whether to grant a motion for mistrial is within the discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion.

4. **Jury Instructions: Judgments: Appeal and Error.** Whether jury instructions given by a trial court are correct is a question of law. When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.

5. **Rules of Evidence: Sexual Assault: Other Acts.** Neb. Rev. Stat. § 27-414 (Cum. Supp. 2012) allows evidence of prior offenses of sexual assault to prove propensity.

6. **____: ____: ____.** Neb. Rev. Stat. § 27-414 (Cum. Supp. 2012) requires a hearing outside the presence of the jury before the court admits evidence of the accused's commission of another offense of sexual assault.

7. **Rules of Evidence: Sexual Assault: Other Acts: Time.** Neb. Rev. Stat. § 27-414 (Cum. Supp. 2012) does not impose any timing requirement as to when the required hearing outside of the presence of the jury must be held.

8. **Rules of Evidence: Other Acts: Time: Intent.** The admissibility of evidence concerning other conduct must be determined upon the facts of each case, and no exact limitation of time can be fixed as to when other conduct tending to prove intent to commit the offense charged is too remote.

9. **Rules of Evidence: Other Acts: Time.** The question whether evidence of other conduct is too remote in time is largely within the discretion of the trial court. While remoteness in time may weaken the value of the evidence, such remoteness does not, in and of itself, necessarily justify exclusion of the evidence.

10. **Rules of Evidence: Other Acts.** Under the plain language of Neb. Rev. Stat. § 27-414(3)(c) (Cum. Supp. 2012), the court is to compare the similarity of the other acts to the crime charged.

11. **Criminal Law: Motions for Mistrial: Appeal and Error.** A mistrial is properly granted in a criminal case where an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.

12. **Motions for Mistrial: Proof.** A defendant faces a higher threshold than merely showing a possibility of prejudice when attempting to prove error predicated on the failure to grant a mistrial.

13. **Jury Instructions.** In the absence of a request for a limiting instruction, there is no reversible error in a court's failure to give a limiting instruction.

14. **Rules of Evidence: Sexual Assault: Other Acts.** Evidence of another offense or offenses of sexual assault, if admissible in a prosecution for an offense of sexual assault, is not received for a limited purpose but may be considered on any matter to which it is relevant.

15. **Appeal and Error.** An objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on any other ground.

16. **Jury Instructions.** Whenever an applicable instruction may be taken from the Nebraska Jury Instructions, that instruction is the one which should usually be given to the jury in a criminal case.

17. **Jury Instructions: Appeal and Error.** All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.

18. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

Appeal from the District Court for Sarpy County: Max Kelch, Judge. Affirmed.

Patrick J. Boylan, Chief Deputy Sarpy County Public Defender, for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## I. INTRODUCTION

In this appeal from convictions and sentences for child abuse and sexual assault, we primarily address the district court's procedures regarding evidence of prior sexual offenses under Neb. Rev. Stat. § 27-414 (Cum. Supp. 2012). Before trial, the court heard testimony from the accused's prior victims, compared the testimony to the current charges, and made a conditional ruling of admissibility. But the court prohibited the State from mentioning or presenting the § 27-414 evidence at trial until after the evidence of the current alleged victims. At trial, the State

first presented the "current" evidence. Then, outside the presence of the jury, the State gave notice of its intent to present the § 27-414 evidence and the court made a final determination of its admissibility. We find no error in the procedures used by the district court, and we reject the other assignments of error challenging the court's rulings on a motion for mistrial and on jury instructions. Accordingly, we affirm.

## II. BACKGROUND

Paul A. Valverde, born in February 1969, is the father of H.L. and the uncle of B.V., both of whom were born in March 1997. The State charged Valverde with two counts of third degree sexual assault of a child, second offense; four counts of child abuse; and four counts of first degree sexual assault of a child, second offense, relating to acts committed against H.L. and B.V. at several locations in Sarpy County, Nebraska, during periods of time between June 1, 2008, and December 10, 2010. The State later moved to dismiss one count of first degree sexual assault of a child, second offense. Because the issues in this appeal are largely limited to the district court's proceedings under § 27-414, we do not summarize various other aspects of the case.

### 1. First Hearing

In April 2011, the State moved to admit evidence of Valverde's commission of another act of sexual assault under § 27-414. The State alleged that Valverde sexually assaulted E.M. when she was 14 years old, fathered a child with her when she was 15 years old, and was convicted of third degree sexual assault of a child in 1995 for the sexual assaults committed on E.M. The State also alleged that in 1988, when Valverde was 20 years old, he molested his 11-year-old niece, T.K. Because T.K. did not testify regarding any sexual assault at trial, we omit further discussion of the evidence adduced at the § 27-414 hearing related to her.

During a hearing on the State's motion, evidence established that E.M., born in June 1979, met Valverde in 1993, when she was 14 years old and he was 24 years old. While E.M. was at Valverde's apartment during the summer of 1993, Valverde

put his hands down her pants and inserted his fingers into her vagina. At other times while E.M. was 14 years old, Valverde inserted his penis into her vagina. The sexual intercourse continued when E.M. turned 15 years old, and she gave birth to Valverde's child when she was 15.

On June 28, 2011, the district court entered an order, finding by clear and convincing evidence that Valverde committed multiple sexual assaults upon E.M. under Neb. Rev. Stat. § 28-319 (Reissue 2008). The court observed that two of the crimes charged in the instant case involved subjecting another person 14 years of age or younger to sexual contact when Valverde was at least 19 years of age, that three charges involved subjecting another person who was at least 12 years of age but less than 16 years of age to sexual penetration when Valverde was 25 years old or older, and that one charge involved subjecting another person who was under 12 years of age to sexual penetration when Valverde was 19 years or older. The court noted that Valverde committed sexual assaults upon E.M. when she was age 14, which was a similar age to H.L. and B.V., and that Valverde was age 19 or older in the prior and current alleged sexual assaults. The court stated that "although the details of the acts that underlie the present charges were not offered, the present charges themselves are of a similar nature to the prior sexual assaults." The court determined that the acts against E.M. were not overly prejudicial from a timing standpoint and that the risk of prejudice did not substantially outweigh the probative value of the evidence of the prior sexual assaults. Therefore, the court determined that E.M. would be allowed to testify at trial regarding the prior sexual assaults committed upon her by Valverde.

## 2. Second Hearing

In October 2011, the State filed another motion seeking to admit evidence under § 27-414. The State alleged that Valverde sexually assaulted H.A., formerly known as H.R., when she was 13 years old and that he was convicted of third degree sexual assault of a child in 1995 for the sexual assault.

During a hearing on the motion, H.A., born in November 1981, testified that she agreed to babysit a child of Valverde's

on one occasion when she was 13 years old. After putting the baby to bed, H.A. fell asleep on a couch and awoke to Valverde's touching her breasts. He also touched her legs and "bottom area." The next day, H.A. reported the incident to the police. The court received into evidence a certified copy of Valverde's conviction for the incident and a copy of the operative information in the instant case.

On November 23, 2011, the district court entered an order granting the State's motion. The court found that Valverde committed a sexual assault upon H.A. pursuant to Neb. Rev. Stat. § 28-320.01 (Reissue 2008). The court stated that H.A. was 13 years old when Valverde committed the sexual assault upon her, which was a similar age to H.L. and B.V. as alleged in two of the counts of the operative information and that Valverde was 19 years or older at the time of the prior and present alleged sexual assaults. The court further stated that

> although the details of the acts that underlie the present charges were not offered, the present charges themselves are of a similar nature to the prior sexual assaults. Therefore, the prior sexual assault committed by [Valverde] upon [H.A.] is found *at this point in this opinion* to be both probative and relevant to the present crimes charged.

(Emphasis in original.) The court stated that H.A. would be allowed to testify at trial, subject to certain restrictions. Due to concerns about cumulative evidence, the court limited the State, in its case in chief, to either calling H.A. to testify or offering Valverde's prior conviction.

The district court compared a pretrial motion to allow evidence under § 27-414 to a motion in limine, because both call for a pretrial ruling to determine the admissibility of evidence. The court emphasized that its ruling allowing the State to present evidence of the prior sexual assaults was not a final ruling due largely to the lack of specificity of facts regarding the current sexual assaults because H.L. and B.V. did not testify in either hearing on the motions to allow evidence under § 27-414. The court prohibited the State from presenting any

evidence under § 27-414 until after evidence had been offered regarding the alleged sexual acts as charged in the operative information. The court continued:

> After the evidence has been presented as to the alleged sexual acts that are contained within the present Information, then, the State shall notify the Court and [Valverde], outside of the presence of the jury, that it intends to call as a witness either [H.A.], [E.M.,] and/or [T.K.] This procedure allows the Court to make a further determination, outside of the presence of the jury, if called upon to render such a ruling, the admissibility of any evidence pursuant to . . . §27-414.

The court further stated, "Although, only advisory to the parties, in the event [H.A.], [E.M.,] and/or [T.K.] do testify at trial, this Court shall issue a cautionary instruction as to their testimony."

### 3. Trial

A jury trial commenced, and consistent with the district court's order, the State did not allude to assaults on the prior victims in its opening statement. The State called B.V. as its first witness. B.V. testified that on July 4, 2009, he went with his family to his grandmother's house; Valverde and H.L. were also present. That evening, Valverde told B.V. to "check and see if [B.V.] had sperm." B.V. "checked" by masturbating, and then Valverde stroked B.V.'s penis. While B.V. had an erection, Valverde pulled down H.L.'s pants and underwear and inserted B.V.'s penis into H.L.'s vagina. According to B.V., Valverde then pushed on B.V.'s back in an up-and-down motion. B.V. felt uncomfortable, so he removed his penis so that it was touching H.L.'s leg when Valverde was not looking. B.V. testified that Valverde said B.V. was "not doing it right" and that Valverde would "show [B.V.] how it's done." Valverde then told B.V. to suck on H.L.'s breasts while Valverde had vaginal intercourse with H.L.

The State next called H.L. to testify. H.L. began living with Valverde when she was 12 years old. In approximately June 2009, they moved to H.L.'s grandmother's home, and Valverde began having sexual intercourse with her a few

weeks later. H.L. testified that Valverde would motion her to go downstairs, she would lie on the floor, and Valverde would remove her clothes and have intercourse with her. According to H.L., Valverde would ejaculate onto H.L.'s stomach and then she would go to the bathroom to clean up. H.L. testified that Valverde would also touch her breasts.

H.L. testified that in the late evening of July 4, 2009, Valverde motioned her to go downstairs. She went downstairs and lay on the floor. According to H.L., B.V. came downstairs and began removing his clothes at Valverde's direction. H.L. testified that Valverde directed B.V. to get on top of H.L. and put his penis into her vagina and that Valverde guided B.V.'s penis into her vagina. H.L. testified that at some point, Valverde told B.V. to get off of H.L. and said that B.V. was "not doing it right." B.V. then began sucking on H.L.'s breasts, and Valverde had vaginal intercourse with her. They lived at H.L.'s grandmother's house until October 2009, during which time Valverde had intercourse with H.L. two or three times a week. H.L. testified that the sexual intercourse continued when H.L. and Valverde moved to an apartment. The acts took place in Valverde's bedroom and regularly occurred four or five times a week. Valverde also made H.L. perform oral sex on him on occasion.

In approximately May 2010, when H.L. was 13 years old, H.L. told Valverde that her menstrual period was late and Valverde bought her a pregnancy test. The test was negative, but within a week Valverde took H.L. to a doctor to have an intrauterine device inserted. H.L. and Valverde moved to a different apartment in October, and the sexual intercourse continued to occur two or three times a week. On December 10, H.L. was supposed to spend the night with her mother. But first, Valverde had intercourse with her on his bed and some of his semen got on H.L.'s underwear. The next day, H.L. disclosed to her mother that Valverde had been making her have sex with him. H.L.'s mother called the police, and an officer escorted them to a hospital. A "rape kit" was administered. Semen was found on H.L.'s underwear and the vaginal swab from the kit. DNA was extracted from these items. The probability of an unrelated individual other than

Valverde matching the DNA profile of the sperm on H.L.'s underwear was 1 in 14.8 quintillion for Caucasians, 1 in 12.6 quintillion for African Americans, and 1 in 61.6 quintillion for American Hispanics.

While the jury was absent from the courtroom, the State announced that E.M. was the next witness it would like to call. Valverde's counsel argued that under Neb. Rev. Stat. § 27-403 (Reissue 2008), the probative value of the evidence of the prior sexual assault did not outweigh the danger of prejudice. The district court responded:

> The Court, in an abundance of caution in the second ruling, November 23, 2011, restricted or prohibited the State from mentioning this [§ 27-414] evidence as to those three prospective witnesses until the Court had an opportunity to hear the evidence, the actual specific evidence as to the pending allegations. However, the Court had already made a finding there was [sic] similarities based upon the charges alone. And after hearing the evidence from both the alleged victims in the trial up to now, the Court finds there are sufficient similarities to proceed, and [Valverde's] objection is overruled at this time.

Valverde moved for a mistrial based upon the procedures used by the court with respect to the prior victims. The court denied the motion.

E.M. is B.V.'s mother. She provided testimony similar to that at the hearing under § 27-414. Valverde did not request a limiting instruction following E.M.'s testimony.

Outside the presence of the jury, the State offered a certified copy of Valverde's prior conviction for third degree sexual assault of a child regarding H.A. Valverde objected, arguing that the exhibit's prejudicial effect to Valverde was outweighed by its probative value and that it would be better for the State to bring in the witness to testify so the jury could make a credibility determination. The court overruled the objection. Valverde objected when the State offered the exhibit into evidence, and the court overruled the objection. Valverde did not request a limiting instruction concerning the exhibit.

The State called T.K. to testify, but because T.K. had trouble recalling dates and whether Valverde was 19 years of age at the time of the incidents, the court sustained an objection by the defense. As mentioned earlier, T.K. ultimately did not testify regarding any sexual assault by Valverde. After the State rested, Valverde rested without presenting any evidence.

During the jury instruction conference, Valverde objected to instruction No. 13 regarding limited purpose but the district court responded that the instruction would be given. Valverde also took issue with instruction No. 15, the instruction involving other acts of sexual assault under § 27-414. The court declined to give Valverde's proposed instructions addressing limited purpose and evidence of prior sexual assaults.

The jury returned a verdict of guilty on all counts. The court subsequently imposed sentences of incarceration.

Valverde timely appeals. Pursuant to statutory authority, we granted the State's petition to bypass the Nebraska Court of Appeals.[1]

## III. ASSIGNMENTS OF ERROR

Valverde assigns error to the procedures used by the district court in receiving evidence under § 27-414, to the court's failure to grant a mistrial, and to the court's giving of certain jury instructions and refusal of others.

## IV. STANDARD OF REVIEW

[1,2] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.[2] Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.[3]

---

[1] See Neb. Rev. Stat. § 24-1106(2) (Reissue 2008).

[2] *State v. Kibbee*, 284 Neb. 72, 815 N.W.2d 872 (2012).

[3] *Id*.

[3] The decision whether to grant a motion for mistrial is within the discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion.[4]

[4] Whether jury instructions given by a trial court are correct is a question of law. When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.[5]

## V. ANALYSIS

### 1. § 27-414 Evidence

This is the first appeal in which we have focused on evidence of "another offense or offenses of sexual assault" relying solely upon § 27-414. Prior to our recent decision in *State v. Kibbee*,[6] we analyzed similar evidence solely as evidence of "other crimes, wrongs, or acts" under Neb. Rev. Stat. § 27-404 (Cum. Supp. 2012).[7]

In *Kibbee*, we addressed evidence offered under both §§ 27-404 and 27-414. There, the State filed a notice of intent to offer prior bad acts evidence pursuant to § 27-404(2) and a notice of intent to offer evidence pursuant to § 27-414 of similar offenses committed by the defendant. The trial court analyzed the admission of the evidence under § 27-404, but we determined that the evidence was admissible under § 27-414 and that we did not need to conduct a separate analysis under § 27-404(2).

In the instant appeal, neither the parties nor the court considered the evidence at issue under § 27-404; thus, § 27-404 is not implicated in this appeal. Significant consequences follow from the State's reliance solely upon § 27-414.

### (a) Statutory Language of § 27-414

We begin by setting forth the complete language of the statute at issue. Section 27-414 provides:

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] See, e.g., *State v. Dreimanis*, 258 Neb. 239, 603 N.W.2d 17 (1999).

(1) In a criminal case in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense or offenses of sexual assault is admissible if there is clear and convincing evidence otherwise admissible under the Nebraska Evidence Rules that the accused committed the other offense or offenses. If admissible, such evidence may be considered for its bearing on any matter to which it is relevant.

(2) In a case in which the prosecution intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the accused, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least fifteen days before the scheduled date of trial or at such later time as the court may allow for good cause.

(3) Before admitting evidence of the accused's commission of another offense or offenses of sexual assault under this section, the court shall conduct a hearing outside the presence of any jury. At the hearing, the rules of evidence shall apply and the court shall apply a section 27-403 balancing and admit the evidence unless the risk of prejudice substantially outweighs the probative value of the evidence. In assessing the balancing, the court may consider any relevant factor such as (a) the probability that the other offense occurred, (b) the proximity in time and intervening circumstances of the other offenses, and (c) the similarity of the other acts to the crime charged.

(4) This section shall not be construed to limit the admission or consideration of evidence under any other section of the Nebraska Evidence Rules.

### (b) Procedures Used by District Court

We next summarize the procedures implemented by the district court. After the State filed its motions to use § 27-414 evidence, the district court held hearings at which evidence of prior sexual assaults was adduced.

During the pretrial hearings, the court heard testimony from the prior victims. Although the court did not hear testimony

from H.L. or B.V., the court compared the evidence of the prior sexual assaults to the current charges contained in the information. Based on similarities between the prior sexual assaults and the current charges, the court stated that the prior victims would be allowed to testify at trial. However, the court emphasized that its ruling allowing the State to present evidence of the prior sexual assaults was not a final ruling on the ultimate admissibility of the evidence. The court prohibited the State from presenting any evidence at trial of the prior sexual assaults until after the State presented evidence as to the alleged sexual assaults against H.L. and B.V.

After such evidence was presented at trial and the State alerted Valverde and the court of its intent to call a prior victim as a witness, the court made a further determination, outside the presence of the jury, of the admissibility of the prior sexual assaults.

In essence, the district court made conditional rulings at the pretrial hearings, reserving final rulings on the admissibility of the evidence under § 27-414 until trial. In doing so, the court followed a framework urged in a legal treatise:

> What is at issue in the [§ 27-414 hearing] is the "other acts" evidence, not the proof of the misconduct that is at issue in the instant case and yet to be tried. Consequently, there should be no requirement that the victim of the action being tried has to testify at the pretrial hearing. The court could take judicial notice of the charges that have been filed in the court and admit the evidence conditionally under [Neb. Rev. Stat. § 27-104(2) (Reissue 2008)]. If the state does not offer sufficient admissible evidence at trial to raise a jury issue that the charged conduct occurred that would make the "other crimes" evidence admissible, then allegations [o]f the "other crimes" evidence would be inadmissible.[8]

The court's procedures ensured that the evidence of the current acts came in at trial—in the presence of the jury—and in making a final determination on the admissibility of evidence under § 27-414, the court compared the prior acts to the current

---

[8] R. Collin Mangrum, Mangrum on Nebraska Evidence 310-11 (2013).

acts. The procedures also ensured that none of the § 27-414 evidence—which must be presented to the court outside the presence of the jury—was disclosed to the jury until after the court made a final determination on admissibility.

Section 27-414 is patterned after Fed. R. Evid. 413. But § 27-414(1) adds a requirement, not included in the federal rule, of "clear and convincing evidence otherwise admissible under the Nebraska Evidence Rules that the accused committed the other offense or offenses." The Nebraska statute also explicitly requires a hearing outside the presence of a jury and a balancing under § 27-403.[9] Nothing in either rule conflicts with the procedures employed by the district court. In fact, the Seventh Circuit approved of similar procedures in *U.S. v. Hawpetoss*.[10] In *Hawpetoss*, the trial court, prior to trial, determined that the prior acts evidence was similar to the charged conduct and was admissible, but the court stressed that its ruling was tentative and that it intended to reconsider its ruling during the trial so that it could evaluate the admission of the evidence in light of the evidence presented to the jury. As in the instant case, the trial court in *Hawpetoss* forbade the parties from mentioning the prior acts evidence in their opening statements.

We now consider Valverde's first assignment of error as it relates to pertinent subsections of § 27-414.

### (c) § 27-414(1)

Under § 27-414(1), evidence of the accused's prior commission of another offense of sexual assault is admissible if there is clear and convincing evidence that the accused committed the other offense. Valverde's brief does not appear to contest whether the State met the clear and convincing evidence standard. And, as the State observes, "Valverde left behind both a human and paper trail that made his prior sexual assaults matters of unquestioned historical fact. He fathered a child by sexually assaulting [E.M.] Valverde was criminally convicted for sexually assaulting [H.A.], as established by court conviction

---

[9] See § 27-414(3).

[10] *U.S. v. Hawpetoss*, 478 F.3d 820 (7th Cir. 2007).

records."[11] We therefore find no merit in Valverde's assignment of error that the State failed to produce clear and convincing evidence that the prior sexual assaults occurred.

[5] Section 27-414 allows evidence of prior offenses of sexual assault to prove propensity.[12] Section 27-414(1) explicitly provides that evidence of the accused's commission of another offense of sexual assault "may be considered for its bearing on any matter to which it is relevant." In contrast, § 27-404(2) did not allow evidence to prove propensity, stating "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith." But § 27-404(2) allowed prior acts evidence for purposes other than propensity, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Clearly, evidence of Valverde's prior sexual assaults could be admitted under § 27-414—subject to the balancing under § 27-403, which we discuss below—to show his propensity to commit such acts.

### (d) § 27-414(2)

Under § 27-414(2), the prosecuting attorney is to disclose to the accused, at least 15 days before trial, the evidence that is expected to be offered. During oral argument, Valverde's counsel conceded that he was given notice at least 15 days before trial of the evidence the State intended to offer. Valverde does not claim in his brief that the State did not comply with § 27-414(2).

### (e) § 27-414(3)

The main thrust of Valverde's first assignment of error relates to the requirements of § 27-414(3). We examine them in turn.

#### (i) Hearing Outside Presence of Jury

[6] Section 27-414 requires a hearing outside the presence of the jury before the court admits evidence of the accused's

---

[11] Brief for appellee at 28.

[12] See *State v. Kibbee*, *supra* note 2.

commission of another offense of sexual assault. Valverde argues that the district court's procedures violated this statutory mandate. We disagree.

[7] The statute does not impose any timing requirement as to when this hearing must be held. The district court held two hearings prior to trial at which it heard evidence of the prior sexual assaults. The court compared the evidence adduced during those hearings to the charges in the current case. The court's order after the second hearing specifically stated that it was not a final ruling on the ultimate admissibility of the prior sexual assaults. It made its final determination after hearing the trial testimony of H.L. and B.V. and comparing that testimony to the testimony of E.M. and H.A. adduced during the hearings pursuant to § 27-414. The final determination followed additional arguments made outside the jury's presence.

The court's procedures prevented the jury from hearing potentially inadmissible evidence of prior sexual assaults until the court made its final ruling on admissibility. We find no abuse of discretion by the court in this regard.

### (ii) Balancing Under § 27-403

Much of Valverde's argument focuses on the required § 27-403 balancing. Section § 27-414(3) sets forth factors that the court may consider in balancing, to which we now turn.

### a. Probability That Other
### Offense Occurred

The first factor, the probability that the other offenses occurred, is not seriously disputed. And as discussed above, a child was born as a result of Valverde's sexual assault of E.M. and a criminal conviction resulted from Valverde's sexual assault of H.A. This factor weighs in favor of admission of the prior sexual assaults.

### b. Proximity in Time and Intervening
### Circumstances of Other Offenses

Valverde relies heavily on the gap in time between the prior and the current offenses. The assaults against E.M. began in

1993, and the assault against H.A. occurred in 1995, whereas the assaults against H.L. occurred beginning in 2008, and the assault against B.V. occurred in 2009.

[8,9] The admissibility of evidence concerning other conduct must be determined upon the facts of each case, and no exact limitation of time can be fixed as to when other conduct tending to prove intent to commit the offense charged is too remote.[13] "The question whether evidence of other conduct 'is too remote in time is largely within the discretion of the trial court. While remoteness in time may weaken the value of the evidence, such remoteness does not, in and of itself, necessarily justify exclusion of the evidence.'"[14]

The Nebraska appellate courts have considered the remoteness of time under § 27-414 on two occasions. In *Kibbee*,[15] the charged act took place in 2009, and we found no abuse of discretion in the admission of evidence regarding prior acts that occurred between 1983 and 1995. The Nebraska Court of Appeals similarly found no abuse of discretion in admitting evidence of an earlier offense that occurred in 1996, where the current offense took place in 2009.[16]

We have allowed admission of evidence even more remote in time in the context of § 27-404. In *Kibbee*, we discussed other cases allowing evidence of prior crimes committed 27 years earlier,[17] 11 to 20 years prior to trial,[18] and 10 years prior to the charged crime.[19]

Remoteness in time is just one factor in the § 27-403 balancing. Here, Valverde last sexually assaulted H.L. approximately 17 years after he first began sexually assaulting E.M. However, the pattern of generational assaults within the same family

---

[13] *State v. Yager*, 236 Neb. 481, 461 N.W.2d 741 (1990).

[14] *State v. Kibbee, supra* note 2, 284 Neb. at 97, 815 N.W.2d at 893, quoting *State v. Yager, supra* note 13.

[15] *State v. Kibbee, supra* note 2.

[16] See *State v. Craigie*, 19 Neb. App. 790, 813 N.W.2d 521 (2012).

[17] *State v. Stephens*, 237 Neb. 551, 466 N.W.2d 781 (1991).

[18] *State v. Yager, supra* note 13.

[19] *State v. Kern*, 224 Neb. 177, 397 N.W.2d 23 (1986).

at similar ages—as further discussed below—weighs heavily against Valverde's argument.

### c. Similarity of Other Acts to Crime Charged

[10] Valverde complains that the district court could not have compared the current offenses to the prior offenses because "there were no facts of the current case provided for comparison."[20] His complaint is based on the court's not requiring H.L. and B.V. to testify at the hearings under § 27-414. It is true that the court had only the allegations contained in the information with which to compare the prior sexual assaults at the time of its preliminary rulings on the admissibility of those prior sexual assaults. But under the plain language of § 27-414(3)(c), the court is to compare the "similarity of the other acts *to the crime charged*." (Emphasis supplied.) That is precisely what the court did. Further, the district court did not make its final ruling on admissibility until after hearing the trial testimony of H.L. and B.V. Thus, contrary to Valverde's repeated assertions, the court was able to consider the facts of the current charged crimes before making a final ruling on balancing under § 27-403.

Valverde also places great weight on the differences between the prior and current offenses. He points out that the assaults occurred at different locations, that the victims were different ages, and that the nature of the acts differed.

But we find much more significance in the similarities. While the assaults occurred at different locations, the prior and current assaults all occurred at the place where Valverde was living. And while the ages of the victims may have varied, they were of similar adolescent ages: E.M. was 14 years old when the assaults began, H.A. was 13 years old, B.V. was 12, and H.L. was sexually assaulted from the time she was 12 until the time she reported the assaults when she was 14. All of the assaults occurred when Valverde was at least 24 years of age. And while the nature of some of the acts differed, other acts were the same. Valverde digitally penetrated and repeatedly

---

[20] Brief for appellant at 24.

had vaginal intercourse with E.M. He touched H.A.'s breast and "bottom area" and told her that he wanted to have sex with her. Valverde touched H.L.'s breasts, repeatedly had vaginal intercourse with her, and made her perform oral sex on him. Valverde touched B.V.'s penis and prompted him to engage in intercourse with H.L. All of the victims knew Valverde, and there was a family-like relationship. Valverde was living with E.M.'s father when Valverde first began sexually assaulting E.M. Valverde and E.M. had a child together, and H.A. was babysitting that child at the time that Valverde assaulted her. H.L. is Valverde's daughter. And B.V., E.M.'s son, is Valverde's nephew.

We noted a number of similarities in *Kibbee*[21] in determining that the trial court did not abuse its discretion in allowing evidence of prior assaults. Like in the instant case, all of the victims in *Kibbee* knew the accused and all of the victims were under the age of majority at the time the sexual assaults occurred. We observed in *Kibbee* that the defendant digitally penetrated all of the victims, that two victims were awakened to find the defendant touching them inappropriately, and that one victim reported the defendant was sitting on the floor next to her—similar to the current victim's report that the defendant was kneeling on the floor next to her. Also in *Kibbee*, we pointed out the similarities of prior sexual assaults in *State v. Carter*[22] as follows:

> All assaults occurred when the victims were between the ages of 6 and 11; all of the victims were subjected to multiple assaults; all assaults occurred at the defendant's residence, his mother's residence, or the victim's residence; all of the victims had either a familial or a family-like relationship to the defendant; all assaults occurred while the defendant had custody or was in complete control of the victims; and each of the victims was incapable of giving consent.[23]

---

[21] *State v. Kibbee, supra* note 2.

[22] *State v. Carter*, 246 Neb. 953, 524 N.W.2d 763 (1994), *overruled on other grounds, State v. Freeman*, 253 Neb. 385, 571 N.W.2d 276 (1997).

[23] *State v. Kibbee, supra* note 2, 284 Neb. at 95-96, 815 N.W.2d at 892.

Valverde argues that under *Kibbee* and *Carter*, overwhelming similarity between the prior and current offenses is required. In *Kibbee*, we stated: "We held that evidence of prior acts may be admitted where there are 'an overwhelming number of significant similarities,' but '"[t]he term 'overwhelming' does not require a mechanical count of the similarities but, rather, a qualitative evaluation."'"[24]

Valverde gives the "overwhelming similarity" language too much weight. As we mentioned at the start of our analysis, this case deals only with admission of evidence under § 27-414. *Kibbee*, on the other hand, involved both §§ 27-404 and 27-414. And § 27-404 prohibits the admission of prior bad acts if offered to prove propensity—the precise reason § 27-414 allows the evidence. *Kibbee* relied on *Carter*, which talked about similarities under § 27-404 for the purpose of proving identity. In that context—comparing crimes to see if they bear the same signature—an overwhelming number of similarities is needed. But in the framework of § 27-414 alone, *Kibbee* should not be read to require overwhelming similarity.

After balancing the above factors, the probative value of Valverde's prior sexual assaults was not outweighed by the danger of unfair prejudice. We conclude that the district court did not abuse its discretion in allowing evidence of Valverde's prior sexual assaults against E.M. and H.A.

## 2. Motion for Mistrial

Valverde argues that the district court should have granted his motion for mistrial when the court decided to admit the § 27-414 evidence in the middle of the jury trial. After the court heard the trial testimony of H.L. and B.V., the court determined that the evidence of prior sexual assaults was admissible. Valverde objected and moved for a mistrial. He argued that the procedure placed the court in a position of judging the credibility and veracity of H.L. and B.V. Valverde further argued:

---

[24] *Id*. at 96, 815 N.W.2d at 892.

I believe the Court's statement based upon the charges alone, that there seems to be similarities, I think that's improper with relation to [§ 27-414].

So especially in light of the fact that the State has not rested, defense has had no opportunity to put on its case in chief whether or not to challenge the veracity of the truthfulness of the statements of [B.V.] or the other witnesses. Those witnesses are still under subpoena, Judge, still subject to recall. And at that time, again, it's improper for the Court at this point in time to make a determination that the evidence that's been heard with respect to [B.V.] and [H.L.] is reliable and truthful under [§ 27-414].

[11,12] A mistrial is properly granted in a criminal case where an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.[25] A defendant faces a higher threshold than merely showing a possibility of prejudice when attempting to prove error predicated on the failure to grant a mistrial.[26]

But, here, the timing of Valverde's motion is important. At the time that Valverde moved for a mistrial, the jury had not heard any evidence of other sexual assaults. There was no reason to grant a mistrial at the time of Valverde's motion, and he did not make a similar motion after the evidence of the prior sexual assaults was admitted. Although we do not believe that the motion would have had merit if made later, it clearly and definitively lacked merit at the time when it was made. We conclude that the district court did not abuse its discretion in denying Valverde's motion for mistrial.

### 3. Jury Instructions

### (a) Limiting Instruction

Valverde attacks the absence of a limiting instruction at the time the evidence of the prior sexual assaults was received. This contention lacks merit for two reasons. First, a limiting

---

[25] *State v. Kibbee, supra* note 2.

[26] *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011).

instruction was not requested. Second, because § 27-414 significantly differs from § 27-404, no limiting instruction would have been appropriate.

[13] Valverde did not request or propose any such instruction before, during, or after introduction of the evidence of the prior sexual assaults. In the absence of a request for a limiting instruction, there is no reversible error in a court's failure to give a limiting instruction.[27]

[14] Even if there had been a request, a limiting instruction was unnecessary. As one treatise explains, "No such limiting instruction would be necessary under [§ 27-414] because the evidence is admissible to prove sexual propensity, even though it may also be relevant for . . . secondary purposes such as proving intent."[28] The treatise further expounds that § 27-414 "obviate[s] the need for such limiting instructions" because such evidence "is admissible for the very purpose of demonstrating that the accused has a propensity to commit the type of sexual misconduct for which he or she has been charged. A limiting instruction would defeat the purpose of the rule."[29] This explanation follows directly from the express language of § 27-414(1), which provides that "such evidence may be considered for its bearing on any matter to which it is relevant." Thus, evidence of another offense or offenses of sexual assault, if admissible in a prosecution for an offense of sexual assault, is not received for a limited purpose but may be considered on any matter to which it is relevant. There was no need to give a limiting instruction at the time the evidence was admitted.

### (b) Instruction on Limited Purpose

Valverde assigns error to the district court's overruling of his objection during the jury instruction conference to instruction No. 13, the instruction on limited purpose. Instruction No. 13 stated: "During this trial I called your attention to some evidence that was received for specified limited purposes;

---

[27] See *State v. Fick*, 18 Neb. App. 666, 790 N.W.2d 890 (2010).

[28] Mangrum, *supra* note 8 at 308.

[29] *Id.* at 310.

you must consider that evidence only for those limited pur-
poses and for no other." Valverde argues that instruction No.
13 was "prejudicially insufficient given the nature of the
[§] 27-414 evidence."[30]

[15,16] Valverde's argument is problematic for two reasons.
First, instruction No. 13 did not address the evidence under
§ 27-414. Instead, it was directed at the times during trial when
the court specifically informed the jury that it was receiving
certain evidence for a limited purpose. But no such advise-
ment was given after evidence of the assaults on E.M. or H.A.
Second, Valverde seems to be asserting a different ground for
his objection than that made during the jury instruction confer-
ence. An objection, based on a specific ground and properly
overruled, does not preserve a question for appellate review
on any other ground.[31] During the instruction conference,
Valverde offered defense's proposed jury instructions Nos. 2
and 3 instead of instruction No. 13. But both of Valverde's
proposed instructions dealt with DNA collection and analysis.
And now, in his brief, Valverde asserts that the court should
have given an instruction patterned after NJI2d Crim. 5.3 on
limited purpose. Valverde's argument is difficult to compre-
hend, because instruction No. 13 *is* NJI2d Crim. 5.3A. In any
event, Valverde asserts that the court should have instructed
the jury as follows:

A. GENERAL LIMITED PURPOSE

Members of the jury, the evidence of (here insert
description) was received for the limited purpose of (here
insert purpose); you must consider the evidence only for
that limited purpose and for no other.[32]

But Valverde did not request this instruction at closing. And
we find no error in the court's use of a pattern jury instruction.
Whenever an applicable instruction may be taken from the
Nebraska Jury Instructions, that instruction is the one which

---

[30] Brief for appellant at 37.

[31] *State v. Robinson*, 272 Neb. 582, 724 N.W.2d 35 (2006), *abrogated on
other grounds, State v. Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010).

[32] Brief for appellant at 35.

should usually be given to the jury in a criminal case.[33] This assignment of error lacks merit.

### (c) Instruction Regarding Prior
### Sexual Assaults

Valverde argues that instruction No. 15, which dealt with the evidence of prior sexual assaults, was prejudicially insufficient to address the § 27-414 evidence. Instruction No. 15 provided:

> You have heard evidence that [Valverde] may have committed other acts of sexual assault. Remember, you may not convict [Valverde] solely because you believe he committed other sexual assaults. [Valverde] is on trial only for the crimes alleged herein, and you may consider the evidence of other acts on any matter to which they are relevant.

During the jury instruction conference, Valverde quarreled that the instruction "inferred [his] disposition or propensity to commit the offense" and that there "should be some reference to the prior other acts, or may have committed other acts in the past, or previously so that we are certain that the jury doesn't assume that the acts that you're referring to are the ones involved in the information in this case."

[17] All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.[34] Instruction No. 15, when read together with all of the other jury instructions, correctly stated the law, was not misleading, and adequately covered the issues. We find no reversible error in the giving of this instruction.

Valverde contends that the district court should have given the limiting instruction that was given in *Kibbee*.[35] But the *Kibbee* opinion was not released until after the trial in this case. The trial court in *Kibbee* concluded that the prior sexual

---

[33] *State v. Freemont*, 284 Neb. 179, 817 N.W.2d 277 (2012).

[34] *State v. Kibbee, supra* note 2.

[35] *Id*.

assaults could be admitted to show motive, opportunity, preparation, or plan under § 27-404(2), and it instructed the jury as follows:

> "The testimony of [the prior victims] relates to [Kibbee's] commission of other instances of sexual assault or child molestation.

> "In a criminal case in which [Kibbee] is accused of an offense of sexual assault, evidence of [Kibbee's] commission of another offense or offenses of sexual assault is admissible and may be considered for its bearing on any matter to which it is relevant including the similarities of the other offenses for the purpose of determining the credibility of [the current victim] or for the purpose of showing [Kibbee's] motive, opportunity, plan or preparation as it relates to the sexual assault charge. However, evidence of a prior offense on its own is not sufficient to prove [Kibbee] guilty of the crime charged. Bear in mind as you consider this evidence, at all times the State has the burden of proving that [Kibbee] committed each of the elements of the offense charged. I remind you that [Kibbee] is not on trial for any act, conduct or offense not charged in the Information."[36]

The instruction given was a product of the prosecution's having adduced evidence under both §§ 27-404 and 27-414. Much of the language contained in the *Kibbee* instruction would not be appropriate here. The district court did not err by failing to give a written limiting instruction similar to that given in *Kibbee*.

[18] Valverde contends that the district court erred in refusing to give his proposed instruction addressing evidence of the prior sexual assaults. To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.[37]

---

[36] *Id*. at 99-100, 815 N.W.2d at 894.

[37] *State v. Sinica*, 277 Neb. 629, 764 N.W.2d 111 (2009).

Valverde's proposed instruction No. 1 provided:

> You have heard evidence that [Valverde] may have committed other conduct in addition to the alleged offenses that [have] been charged in the Information.
>
> You are instructed that evidence of conduct by [Valverde], on a previous occasion with witnesses [E.M.] and [H.A.], has been offered by the State for its bearing on any matter to which it is relevant, except for [Valverde's] disposition or propensity to commit the offense that is charged in the Information.
>
> It is entirely up to the jury to determine what weight, if any, such "other conduct" evidence deserves. In reaching your conclusion, you may consider all of the surrounding facts and circumstances of such testimony and give it such weight as you think it is entitled to receive in light of your experience and knowledge of human affairs.
>
> However, you are cautioned that [Valverde] is not on trial here for any conduct or crimes not alleged in the Information. [Valverde] may not be convicted of the offenses charged in the Information if you were to find only that he committed the "other conduct" at some other time. You are reminded that, at all times, the State bears the burden of proving beyond a reasonable doubt that [Valverde] committed the offense charged in the Information.

Valverde's proposed instruction No. 1 would have excluded his propensity to commit the offenses charged in the information—which is precisely the purpose for which § 27-414 was enacted. Because his proposed instruction No. 1 stated that the prior sexual assault evidence could not be considered for his propensity to commit the current offenses, it contained an incorrect statement of law, and the district court did not err in refusing to give it. This is sufficient to resolve the argument on appeal, and we do not address any other aspect of the proposed instruction.

## VI. CONCLUSION

We find no abuse of discretion by the district court in its procedures for determining the admissibility of evidence of Valverde's prior sexual assaults. Because Valverde moved for a mistrial before any evidence of the prior sexual assaults had been adduced, the district court did not abuse its discretion in overruling the motion. Finally, we find no reversible error by the court in the jury instructions that it gave or in the rejection of Valverde's proposed instructions. Accordingly, we affirm the judgment of the district court.

AFFIRMED.

————————————

MID AMERICA AGRI PRODUCTS/HORIZON, LLC, ET AL.,
RELATORS, V. HONORABLE DONALD E. ROWLANDS,
JUDGE, DISTRICT COURT FOR LINCOLN COUNTY,
NEBRASKA, RESPONDENT, AND LANSING TRADE
GROUP, LLC, AND LANSING ETHANOL
SERVICES, LLC, INTERVENORS.
___ N.W.2d ___

Filed July 19, 2013.    No. S-12-473.

1. **Mandamus.** A court issues a writ of mandamus only when (1) the relator has a clear right to the relief sought, (2) a corresponding clear duty exists for the respondent to perform the act, and (3) no other plain and adequate remedy is available in the ordinary course of law.

2. **Mandamus: Proof.** In a mandamus action, the party seeking mandamus has the burden of proof and must show clearly and conclusively that such party is entitled to the particular thing the relator asks and that the respondent is legally obligated to act.

3. **Verdicts: Evidence: Appeal and Error.** Recommended factual findings of a special master have the effect of a special verdict, and the report upon questions of fact, like the verdict of a jury, will not be set aside unless clearly against the weight of the evidence.

4. **Mandamus: Words and Phrases.** A writ of mandamus is issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person.

5. ____: ____. Mandamus is a law action and is an extraordinary remedy, not a writ of right.